**BURSOR & FISHER, P.A.**
Ines Diaz Villafana (State Bar No. 354099)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: idiaz@bursor.com

*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIL HODGES, individually and on behalf of all other persons similarly situated,<br><br>    Plaintiff,<br><br>        v.<br><br>ADOBE INC.,<br><br>    Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**<u>DEMAND FOR JURY TRIAL</u>** |

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

# TABLE OF CONTENTS

**PAGE**

NATURE OF THE ACTION .................................................................................................1

JURISDICTION AND VENUE ............................................................................................1

THE PARTIES .......................................................................................................................2

FACTUAL ALLEGATIONS ................................................................................................3

      I.      The California Information Privacy Act .......................................................3

      II.     The Federal Wiretap Act ..............................................................................4

      III.    Optum's Website ...........................................................................................5

      IV.    Defendant's Tracking Technology ..............................................................15

      V.     Defendant Intercepts, Records, and/or Eavesdrops on Californians' Communications ..........................................................................................18

      VI.    Optum Enables Defendant to Pair the Above Data with Users' Identities ....................................................................................................22

      VII.   Tolling .........................................................................................................25

CLASS ALLEGATIONS .....................................................................................................25

CAUSES OF ACTION ........................................................................................................28

PRAYER FOR RELIEF ......................................................................................................37

DEMAND FOR JURY TRIAL ...........................................................................................38

Plaintiff Gil Hodges ("Plaintiff") files this class action complaint on behalf of himself and all others similarly situated (the "Class Members") against Adobe Inc. ("Adobe" or "Defendant"). Plaintiff brings this action based upon personal knowledge of the facts pertaining to himself, and on information and belief as to all other matters, by and through the investigation of undersigned counsel.

## NATURE OF THE ACTION

1.      This is a class action lawsuit brought on behalf of a class and subclass of all persons in the United States and residents of California, respectively, who, during the class period, had their personally identifiable information ("PII") and/or protected health information ("PHI") improperly intercepted, eavesdropped, and/or recorded by Adobe, as a result of using the Optum website (available at optum.com, hereinafter, the "Website"), which is owned, operated, and controlled by Optum, Inc. ("Optum").

2.      Defendant intercepts, eavesdrops, and/or records Plaintiff's and Class Members' communications while using the Website, including communications containing PII and/or PHI. Plaintiff brings this action for legal and equitable remedies resulting from these illegal actions.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and there are more than 100 members of the Class, and there is minimal diversity.

4.      The Court has general personal jurisdiction over Defendant because Defendant is headquartered in San Jose, California, and is thus at home in California.

5.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant resides in this District and a substantial portion of the events giving rise to this action occurred in this District.

## THE PARTIES

***Plaintiff Gil Hodges***

6. Plaintiff Gil Hodges is an adult citizen of the state of California and is domiciled in San Bernardino, California.

7. In or around August 2023 and August 2025, Plaintiff Hodges visited the Website on the Google Chrome web browser. Plaintiff Hodges was in California each time he visited the Website. Upon accessing the Website, Plaintiff searched for an ophthalmologist, and for primary care doctors.

8. Because Plaintiff accessed the Website to search for an ophthalmologist and for primary care doctors, and because of Defendant's actions as alleged herein, Plaintiff's use of the Website has led to the unlawful interception of and/or disclosure of his medical information, including information regarding his medical condition, history, and treatment.

9. Specifically, Defendant intercepted , eavesdropped, and/or recorded Plaintiff's communications, including information about the medical consultations Plaintiff and Class Members scheduled on the Website—namely, the state where they are seeking care, the particular search queries and care categories selected by users, the preferred gender of the doctor they wish to see, the name of the doctor they select, and/or the particular facility they select.

10. Pursuant to the systematic process described herein, Defendant intercepted, eavesdropped, and/or recorded Plaintiff's communications, including those that contained PII, PHI, and related confidential information. Defendant intercepted, eavesdropped, and/or recorded these communications without Plaintiff's knowledge or consent.

11. By failing to receive the requisite consent, Defendant breached its duties of confidentiality and unlawfully intercepted Plaintiff's PII and PHI.

***Defendant Adobe Inc.***

12. Adobe Inc. ("Adobe" or "Defendant") is incorporated in Delaware and has its principal place of business at 345 Park Avenue, San Jose, California 95110-2704. Defendant is a multinational computer software company that provides software for creative design, document

management, and digital marketing, enabling users to create, publish, and promote content.

## FACTUAL ALLEGATIONS

**I.        The California Information Privacy Act**

13.    The California Legislature enacted the Invasion of Privacy Act to protect certain privacy rights of California citizens. The legislature expressly recognized that "the development of new devices and techniques for the purpose of eavesdropping upon private communications … has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society." Cal. Penal Code § 630.

14.    The California Supreme Court has repeatedly stated an "express objective" of CIPA is to "protect a person placing or receiving a call from a situation where the person on the other end of the line *permits an outsider to tap his telephone or listen in on the call*." *Ribas v. Clark*, 38 Cal. 3d 355, 364 (1985) (emphasis added).

15.    Further, as the California Supreme Court has held in explaining the legislative purpose behind CIPA:

> While one who imparts private information risks the betrayal of his confidence by the other party, a substantial distinction has been recognized between the secondhand repetition of the contents of a conversation and its *simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or mechanical device.*
>
> As one commentator has noted, such secret monitoring denies the speaker an important aspect of privacy of communication—the right to control the nature and extent of the firsthand dissemination of his statements.

*Ribas*, 38 Cal. 3d at 360-61 (emphasis added; internal citations omitted).

16.    As part of CIPA, the California Legislature enacted § 631(a), which prohibits any person or entity from [i] "intentionally tap[ping], or mak[ing] any unauthorized connection … with any telegraph or telephone wire," [ii] "willfully and without the consent of all parties to the communication … read[ing], or attempt[ing] to read, or to learn the contents or meaning of any … communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within [California]," or [iii] "us[ing], or attempt[ing] to use … any

information so obtained."

17. CIPA § 631(a) also penalizes [iv] those who "aid[], agree[] with, employ[], or conspire[] with any person" who conducts the aforementioned wiretapping, or those who "permit" the wiretapping.

18. As part of the Invasion of Privacy Act, the California Legislature additionally introduced Penal Code § 632(a), which prohibits any person or entity from "intentionally and without the consent of all parties to a confidential communication, us[ing] an electronic amplifying or recording device to eavesdrop upon or record [a] confidential communication."

19. A "confidential communication" for the purposes of CIPA § 632 is "any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto." Cal. Penal Code § 632(c).

20. Individuals may bring an action against the violator of CIPA §§ 631 and 632 for $5,000 per violation. Cal. Penal Code § 637.2(a)(1). Plaintiff does so, here, against Defendant.

## II. The Federal Wiretap Act

21. The Federal Wiretap Act, as amended by the Electronic Communications Privacy Act of 1986, makes it unlawful for a person to intentionally intercept, endeavor to intercept or procure any other person to intercept or endeavor to intercept any wire, oral or electronic communication. 18 U.S.C. § 2511(a).

22. Under the Federal Wiretap Act, "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of [the Federal Wiretap Act] may in a civil action recover from the person or entity . . . which engaged in that violation such relief as may be appropriate." 18 U.S.C. § 2520(a).

23. Persons who have been damaged due to the unauthorized interception, disclosure, and use of their confidential communications are entitled to: (1) damages, in an amount to be determined at trial, assessed as the greater of (a) the sum of the actual damages suffered by Plaintiff and any profits made by Defendant as a result of the violation, or (b) statutory damages of whichever is the greater of $100 per day per violation or $10,000; (2) appropriate equitable or declaratory relief; and

(3) reasonable attorneys' fees and other costs reasonably incurred.

**III.   Optum's Website**

24.     Optum facilitates a variety of health care services for its patients such as primary care, specialty care, urgent care, virtual care, chronic condition care, and outpatient surgery.[1]

25.     Users of Optum's Website can search to find care and become a patient online, to access medical care and manage their treatment or diagnosis of medical conditions.

26.     Users may search for providers and/or care locations through Optum's search function, which allows patients to "[s]earch by provider, specialty or category" and also "[b]rowse categories" of care.[2]

27.     After finding a provider and/or care location that best suits their needs, users can submit a form to become an Optum patient—without ever leaving home.

28.     Unbeknownst to Plaintiff and Class Members, however, Defendant intercepts, records, and/or eavesdrops on those confidential communications using its tracking technologies, as set out *infra*.

29.     Defendant's tracking technologies are integrated into the Website. Through the integration of Defendant's tracking technologies,[3] Defendant intercepts, records, and/or eavesdrops, and otherwise obtains the identities and communications of Optum's Website users, including communications related to the type of medical treatment that Website users were seeking and for which they submitted a form to become a patient.

30.     Website users' confidential communications are the product of users affirmatively entering, and interacting with, information on the Website (*i.e.*, the confidential communications are

---

[1] *See* OPTUM, *Health Care*, https://www.optum.com/en/care.html (last accessed Nov. 4, 2025).

[2] OPTUM, *Find care in California*, https://www.optum.com/en/care/locations/optum-california/find-care.html? (last accessed Nov. 4, 2025).

[3] *See, e.g.*, ADOBE, MARKETO ENGAGE | SETUP STEPS, https://experienceleague.adobe.com/en/docs/marketo/using/getting-started/initial-setup/setup-steps; ADOBE, ADOBE ENTERPRISE DOCUMENTATION, https://experienceleague.adobe.com/en/docs; ADOBE, TAGS OVERVIEW, https://experienceleague.adobe.com/en/docs/experience-platform/tags/home.

---

not procedurally or automatically generated). Instead, as set out below, the confidential communications stem from users conveying responses to questions and prompts, and actively making other selections. All of the foregoing is information created through the intent of Website users, *e.g.*: (1) information created by and in response to users' communicative inputs; (2) information created by and in response to users' intended messages to the Website, and Optum; and (3) information created by the Website in response to users' having conveyed and expressed their respective desires that the Website would supply them with certain, highly personalized, types of information and/or responses. Defendant's tracking technologies contemporaneously intercept, record, and/or eavesdrop Website users' button clicks selecting such services.

31.    When a user enters optum.com they are prompted to "[f]ind care near you[.]" *See* Screen 1.



"Screen 1"

32.    Next, users are prompted to "[f]ind doctors and locations near you[.]" *See* Screen 2A. To do so, users may select between one or more "[c]are options" provided by Optum. *See id.*

Alternatively, users may use the list to "find care in another state[.]"  *See* Screen 2B.  Users click on a particular state and then click "[f]ind care[.]"  *See* Screens 2B and 2C ("Find care in California").



**"Screen 2A"**



**"Screen 2B"**

**"Screen 2C"**

33.    If users had selected "[f]ind care in California" (*supra* Screen 2C), users are brought to a new page where users may "[s]earch by provider, specialty or category[.]" *See* Screen 3. Users may type a search inquiry into the search bar. *See id*. Alternatively, users may select a care category: either (1) "[p]rimary care" or (2) "[u]rgent care[.]" *See id.*



**"Screen 3"**

34.    Users who searched for a provider, specialty, or care category using the search bar (*see supra* Screen 3) are brought to a results page, where users may further refine their search. *See* Screen 4A. And users who selected a particular care category (*see supra* Screen 3) are brought to a substantially similar screen. *See* Screen 4B.

///

///

///

///



"Screen 4A"



"Screen 4B"

35.     On the results page, users can click one or more drop-down arrows to "[f]ilter" their results and find the provider or location that best suits their needs.  Filters include, but are not limited

to: "Providers and Locations[,]" "Specialty[,]" "Gender[,]" and "Language[.]"  *See* Screens 5A-5E. Users click "Apply" to apply these filters.  *See id.*



**36.**    Afterwards, users are provided with a list of providers or locations.  *See* Screen 6A (list of providers); Screen 6B (list of locations).  Users can select a provider or location from the list of "results."  *See id.*

///

///

///

///

///

///



"Screen 6A"



"Screen 6B"

37.    When users click on a specific provider (*see supra* Screen 6A), they are taken to that provider's page, *see* Screen 7A, where users can read more "[a]bout" that provider, *see* Screen 7B. Patients can also read about that provider's education and reviews left by other patients. *See* Screen 7C.



**"Screen 7A"**



**"Screen 7B"**



**"Screen 7C"**

///

///

38.    The provider's page also lists the address of the clinic where the provider is currently "[s]eeing patients[.]"  *See* Screen 8.  Optum asks that patients to "contact the clinic directly to schedule and confirm appointment availability."  *See id.*



**"Screen 8"**

39.    Clicking on a particular clinic brings users to that clinic's page.  *See* Screen 9.



**"Screen 9"**

///

///

///

///

///

///

40.    On the provider page and the clinic page, users have the option to "[b]ecome a patient." *See supra* Screen 9; *see also* Screen 10. Clicking "[b]ecome a patient" takes users to a form where users are required to provide their first and last name, email, phone number, date of birth, state, and zip code. *See* Screen 11. Finally, users click "[s]ubmit" to submit their form to become a patient. *See id.*



**"Screen 10"**



**"Screen 11"**

41.     After users fill out the form, Optum reaches out to users.  *See* Screen 12; *see also supra,* Screen 11.



**"Screen 12"**

## IV.    Defendant's Tracking Technology

42.     Defendant intentionally intercepts, records, and/or eavesdrops Website users' communications on the Website with its tracking technologies, which were embedded purposefully on the Website so that Defendant could intercept users' PHI and PII for marketing and advertising purposes.

43.     Defendant's tracking technologies send secret instructions to a Website user's browser, without alerting the individual that this is happening.  The trackers then cause the browser to secretly and simultaneously duplicate the user's Website communications, transmitting these communications to Defendant's servers alongside additional information about the Website user's identity.  This entire process occurs within milliseconds.  In other words, when a user communicates with Optum's Website, those communications are simultaneously and contemporaneously duplicated and sent to Defendant at the same time as they are being sent to Optum.  Thus, Defendant's interception of these communications occurs "in transit."  *See, e.g.*, *In re Facebook Internet Tracking Litig.*, 956 F.3d 589, 608 (9th Cir. 2020) ("Permitting an entity to engage in the unauthorized duplication and forwarding of unknowing users' information would render permissible the most

common methods of intrusion…"); *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019) ("Even if the browser caused a parallel signal to be sent to NaviStone, that intervention happened while the signal was already in transit from Revitch's device. Section 631's protections extend explicitly to the beginnings and ends of communications…"); *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 961-62 (N.D. Cal. 2023) (finding in-transit interception was alleged based on similar process to the one alleged herein).

44.    Specifically, Defendant intercepts, records, and/or eavesdrops on Website users' communications on the Website with trackers associated with "Marketo Engage."[4] "Adobe Marketo Engage is … [a] marketing automation platform"[5] that "enables marketers to manage personalized multi-channel programs and campaigns to prospects and customers."[6]  "Marketing automation enables [clients like Optum] to streamline, automate, and measure marketing tasks and workflows so [clients like Optum] can increase operational efficiency and grow revenue faster."[7]

45.    Marketo Engage relies, in large part, on the "Munchkin Tracking Code."[8]

---

[4] *See, e.g.*, MARKETO DEVELOPER GUIDE, JAVASCRIPT API (last updated Sept. 28, 2025), available at https://experienceleague.adobe.com/en/docs/marketo-developer/marketo/javascriptapi/javascript-api; *see also, e.g.*, MARKETO DEVELOPER GUIDE, ADOBE EXPERIENCE CLOUD INTEGRATIONS OVERVIEW (last updated Sept. 21, 2025), available at https://experienceleague.adobe.com/en/docs/marketo/using/product-docs/adobe-experience-cloud-integrations/adobe-experience-cloud-integrations-overview.

[5] ADOBE, ADOBE MARKETO ENGAGE DOCUMENTATION, available at https://experienceleague.adobe.com/en/docs/marketo-engage (last accessed Nov. 10, 2025). *See also* ADOBE, WHAT IS ADOBE MARKETO ENGAGE?, available at https://experienceleague.adobe.com/en/docs/marketo/using/getting-started/what-is-adobe-marketo-engage (last accessed Dec. 1, 2025) (stating Marketo Engage is a "marketing automation software").

[6] MARKETO DEVELOPER GUIDE, GETTING STARTED (last updated October 19, 2025), available at https://experienceleague.adobe.com/en/docs/marketo-developer/marketo/getting-started.

[7] MARKETO DEVELOPER GUIDE, WHAT IS ADOBE MARKETO ENGAGE? (last updated Sept. 19, 2025), available at https://experienceleague.adobe.com/en/docs/marketo/using/getting-started/what-is-adobe-marketo-engage (emphasis added).

[8] *See, e.g.*, MARKETO DEVELOPER GUIDE, JAVASCRIPT API (last updated Sept. 28, 2025), available at https://experienceleague.adobe.com/en/docs/marketo-developer/marketo/javascriptapi/javascript-api ("Marketo's Munchkin JavaScript tracking code is key to the capabilities of Marketo.").

---

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                                16

46. Defendant explains that "Munchkin is the JavaScript snippet you put on your website. **It tracks visits, clicks, and form fill outs**."[9]  More specifically, "Marketo's Munchkin JavaScript allows for tracking of end-user page visits and clicks to your Marketo landing pages and external web pages."[10]

47. "The default behavior of Marketo Munchkin is to do the following on page load:

1. Check to see if the current browser has a Munchkin cookie and create one if it is not there.

2. Send a 'Visit Web Page' event to the designated Marketo instance using the information from the current page and browser. This records an activity to the corresponding record in Marketo.

3. Send 'Clicked Link on Web Page' event for any user clicks that occur on links."[11]

48. The Munchkin Tracking Code must be embedded into a website for Defendant to track users.[12] Indeed, "there are a few steps [Optum] need[s] to complete"[13] to set up Marketo Engage.  "These steps include:

- Branding your Landing Page URLs and email links to improve trust and deliverability[;]

- Configuring protocols for Marketo Engage[;]

---

[9] MARKETO ENGAGE, MUNCHKIN (last updated Nov. 25, 2024), available at https://experienceleague.adobe.com/en/docs/marketo/using/product-docs/administration/setup/munchkin (emphasis added).

[10] MARKETO ENGAGE, LEAD TRACKING API (last updated Sep. 28, 2025), available at https://experienceleague.adobe.com/en/docs/marketo-developer/marketo/javascriptapi/leadtracking/lead-tracking?lang=en.

[11] *Id.*

[12] *See* MARKETO ENGAGE, LEAD TRACKING API (last updated Sep. 28, 2025), available at https://experienceleague.adobe.com/en/docs/marketo-developer/marketo/javascriptapi/leadtracking/lead-tracking?lang=en ("Your Marketo instance automatically provides pre-configured tracking code snippets to embed code on your external pages which track activity back to your Marketo instance.").

[13] MARKETO ENGAGE, SETUP STEPS (last updated Sep. 21, 2025), available at https://experienceleague.adobe.com/en/docs/marketo/using/getting-started/initial-setup/setup-steps.

---

- Syncing your CRM [or Customer Relationship Management[;] [and]

- **Adding tracking code** to your corporate website[.]"[14]

49.    When Defendant uses its tracking technologies to intercept, record, and/or eavesdrop on Website users' communications, the tracking technologies are not like tape recorders or "tools" used by one party to record the other.  Instead, Defendant—a separate and distinct entity from the parties to the conversations—uses the tracking technologies to intercept, eavesdrop upon, record, extract data from, and analyze conversations to which it is not a party.  Defendant, itself, collects the contents of said conversations.  That data is then analyzed by Defendant before being provided to any entity that was a party to the conversations (like Optum).

50.    Defendant has the capability to use the contents of conversations it collects through its tracking technologies for its own purposes.

## V.    Defendant Intercepts, Records, and/or Eavesdrops on Californians' Communications

51.    Defendant, as enabled by Optum, contemporaneously intercepts, records, eavesdrops, and/or otherwise obtains the following communications of users of Optum's Website.  The highlights in the below transmissions show communications on the Website.

52.    As shown by the highlights in the below screenshot of the Website transmissions, Defendant intercepts, records, eavesdrops, and/or otherwise obtains the fact that users clicked to find care (here, "care/locations").  These communications are the product of button clicks on Screen 1.

| _mchNc | 1762360983201 |
| _mchHr | https://www.optum.com/en/care/locations.html |
| _mchId | 243-DKH-914 |
| _mchTk | _mch-optum.com-17213067c5e54685fab0718b1759e0b5 |
| _mchCn | |
| _mchHo | www.optum.com |
| _mchPo | |
| _mchRu | /en/ |
| _mchPc | https: |
| _mchVr | 164 |
| _mchEcid | 075361B6524D9C810A490D4C@AdobeOrg:9:394798823117893441335412167454543596 94;8E391C8B533058250A4 90D4D@AdobeOrg:9:4126651966348253463451547396795464 6292 |

---

[14] *Id.* (emphasis added).

53.     As shown by the highlights in the below screenshot of the Website transmissions, Defendant intercepts, records, eavesdrops, and/or otherwise obtains the particular state that users selected to find care (here, "optum-california").  These communications are the product of button clicks on Screens 2B and 2C.

| _mchNc | 1762361528841 |
| _mchHr | https://www.optum.com/en/care/locations/optum-california/find-care.html |
| _mchId | 243-DKH-914 |
| _mchTk | _mch-optum.com-17213067c5e54685fab0718b1759e0b5 |
| _mchCn | |
| _mchHo | www.optum.com |
| _mchPo | |
| _mchRu | /en/care/locations.html |
| _mchPc | https: |
| _mchVr | 164 |
| _mchEcid | 075361B6524D9C810A490D4C@AdobeOrg:9:394798823117893441335412167454543596 94;8E391C8B533058250A4 90D4D@AdobeOrg:9:412665196634825346345154739679546 46292 |

54.     As shown by the highlights in the below screenshots of Website transmissions, Defendant intercepts, records, eavesdrops, and/or otherwise obtains the fact that users typed a search inquiry into the search bar and clicked search (here, "search-results"; "query=chest+pain").  Also as shown by the below highlights, Defendant intercepts, records, eavesdrops, and/or otherwise obtains the fact that users select a care category (here, "search-results"; "query=primary+care").  These communications are the product of typing and button clicks on Screen 3.

| _mchNc | 1762361620018 |
| _mchCn | |
| _mchId | 243-DKH-914 |
| _mchTk | _mch-optum.com-17213067c5e54685fab0718b1759e0b5 |
| _mchHo | www.optum.com |
| _mchPo | |
| _mchRu | /en/care/locations/optum-california/find-care/search-results.html |
| _mchPc | https: |
| _mchVr | 164 |
| _mchEcid | 075361B6524D9C810A490D4C@AdobeOrg:9:394798823117893441335412167454543596 94;8E391C8B533058250A4 90D4D@AdobeOrg:9:412665196634825346345154739679546 46292 |
| _mchHa | |
| _mchRe | https://www.optum.com/en/care/locations/optum-california/find-care.html? |
| _mchQp | query=chest+pain |

55.    As shown by the highlights in the below screenshot of the Website's transmissions, Defendant intercepts, records, eavesdrops, and/or otherwise obtains the fact that users clicked to apply various filters (here, "entityType=p" as in provider; "gender=f' as in female"). Also as shown by the below highlights, Defendant intercepts and/or otherwise obtains the name of the particular provider that users select (here, "providers…trang-dai-eng-md" as in Trang Dai Eng, MD). These communications are the product of button clicks on Screens 5A-5E and 6A.

56.    As shown by the highlights in the below screenshots of Website transmissions, Defendant intercepts, records, eavesdrops, and/or otherwise obtains the particular clinic users select

(here, "facilities/ca/optum-arcadia"). These communications are the product of button clicks on Screen 8.

| _mchNc | 1762361819990 |
|---|---|
| _mchCn | |
| _mchId | 243-DKH-914 |
| _mchTk | _mch-optum.com-17213067c5e54685fab0718b1759e0b5 |
| _mchHo | www.optum.com |
| _mchPo | |
| _mchRu | /en/care facilities/ca/optum-arcadia-46397840.html |
| _mchPc | https: |
| _mchVr | 164 |
| _mchEcid | 075361B6524D9C810A490D4C@AdobeOrg:9:3947988231178934413354121674545459694;8E391C8B533058250A490D4D@AdobeOrg:9:4126651966348253463451547396795464292 |
| _mchHa | |
| _mchRe | https://www.optum.com/en/care/providers/ca/trang-dai-eng-md-1932461241.html |
| _mchQp | |

57.    As shown by the highlights in the below screenshots of Website transmissions, Defendant intercepts, records, eavesdrops, and/or otherwise obtains the fact that users clicked to become a patient (here, "become-patient"). These communications are the product of button clicks on Screen 10.

| _mchNc | 1762361880534 |
|---|---|
| _mchCn | |
| _mchId | 243-DKH-914 |
| _mchTk | _mch-optum.com-17213067c5e54685fab0718b1759e0b5 |
| _mchHo | www.optum.com |
| _mchPo | |
| _mchRu | /en/care/become-patient.html |
| _mchPc | https: |
| _mchVr | 164 |
| _mchEcid | 075361B6524D9C810A490D4C@AdobeOrg:9:3947988231178934413354121674545459694;8E391C8B533058250A490D4D@AdobeOrg:9:4126651966348253463451547396795464292 |
| _mchHa | |
| _mchRe | https://www.optum.com/en/care/facilities/ca/optum-arcadia-46397840.html |
| _mchQp | |

58.    As shown by the highlights in the below screenshots of Website transmissions, Defendant intercepts, records, eavesdrops, and/or otherwise obtains the fact that users clicked to submit their form and become a patient (here, "thank-you"). These communications are the product of button clicks on Screen 11.

| _mchNc | 1762374886487 |
| _mchCn | |
| _mchId | 243-DKH-914 |
| _mchTk | _mch-optum.com-17213067c5e54685fab0718b1759e0b5 |
| _mchHo | www.optum.com |
| _mchPo | |
| _mchRu | /en/care/become-patient/thank-you.html |
| _mchPc | https: |
| _mchVr | 164 |
| _mchEcid | 075361B6524D9C810A490D4C@AdobeOrg:9:394798823117893441335412167454543596948E391C8B533058250A490D4D@AdobeOrg:9:412665196634825346345154739679546462926292 |
| _mchHa | |
| _mchRe | https://www.optum.com/en/care/become-patient.html |
| _mchQp | |

59. Plaintiff never consented, agreed, authorized, or otherwise permitted Defendant to intercept, record, and/or eavesdrop, his PII, PHI, and/or other communications. Moreover, Plaintiff was never provided with notice that Defendant intercepted, recorded, and/or eavesdropped, the PHI, PII, and/or other communications of users of the Website, nor was he provided any means of opting out of such interceptions, recordings, and/or eavesdropping. Defendant nonetheless knowingly and intentionally intercepted Plaintiff's PHI, PII, and/or other communications for the purpose of effectuating targeted advertising for Optum and to further generate revenue for Defendant.

60. By law, Plaintiff is entitled to privacy and had a reasonable expectation of privacy over his PHI, PII, and other confidential communications. Defendant deprived Plaintiff of his privacy rights when it: (1) deployed a system that surreptitiously tracked, recorded, eavesdropped, and intercepted Plaintiff's and other online patients' confidential communications, PII, and PHI; and (2) undertook this pattern of conduct without notifying Plaintiff and without obtaining consent. As explained in more detail *infra* § VIII, Plaintiff did not discover that Defendant intercepted his PII, PHI, and other communications until November 2025.

## VI. Optum Enables Defendant to Pair the Above Data with Users' Identities

61. The Adobe tracking technology at issue pairs data Defendant intercepts, records, and/or eavesdrops from the Website (including Website users' medical information) with Website users' identities.

62. The Adobe tracking technologies at issue here rely on Adobe cookies in order to

identify individual website users.[15]  A cookie is a "small text file (up to 4KB) created by a website that is stored in the user's computer either temporarily for that session only or permanently in storage (persistent cookie)."[16]  Persistent cookies can be used to "track user behavior across different sites. They store information such as geographic location, device specifications, and specific actions taken on the website."[17]

63.    The following image confirms that, when a user accesses the Website, the Adobe tracking technologies on the Website compel that user's browser to transmit several Adobe cookies, including the _mkto_trk cookie:

| Name | Value | Domain | Path | Expi... | Size | Http... | Sec... | Sam... | Parti... | Cr... | Priority |
|---|---|---|---|---|---|---|---|---|---|---|---|
| AMCVS_075361B6524D... | 1 | .optum.com | / | Sess... | 42 | | | | | | Medium |
| AMCVS_8E391C8B5330... | 1 | .optum.com | / | Sess... | 42 | | | | | | Medium |
| AMCV_075361B6524D9... | 1176715... | .optum.com | / | 202... | 265 | | | | | | Medium |
| AMCV_8E391C8B53305... | 1176715... | .optum.com | / | 202... | 265 | | | | | | Medium |
| _mkto_trk | id:243-D... | .optum.com | / | 202... | 77 | | | | | | Medium |
| at_check | true | .optum.com | / | Sess... | 12 | | | | | | Medium |
| mbox | PC#a304... | .optum.com | / | 202... | 107 | | | | | | Medium |
| s_cc | true | .optum.com | / | Sess... | 8 | | | | | | Medium |
| s_gpv_pagename | optum%... | .optum.com | / | 202... | 90 | | ✓ | | | | Medium |
| s_sq | %5B%5B... | .optum.com | / | Sess... | 17 | | | | | | Medium |
| s_vi_x60betux7Edyqx7C... | [CS]v4\|3... | .omtrdc.net | / | 202... | 84 | | ✓ | None | | | Medium |

64.    Through the _mkto_trk tracking cookie, "[t]he first time someone visits a … page on [a] website that has the Munchkin Tracking Code[] Marketo creates an *anonymous activity* and uses a browser cookie to track it. Once it's identified, it becomes a person and the history associated with their browser cookie is merged in."[18]

---

[15] *See, e.g.*, ADOBE, COOKIES USED IN EXPERIENCE CLOUD, https://experienceleague.adobe.com/en/docs/core-services/interface/data-collection/cookies/overview ("Adobe Experience Cloud uses cookies. A cookie is a small piece of data a website sends to your browser, which stores it for later use. Cookies help the website remember things when you visit again or move between pages. Cookies help track visits and tell one device apart from another.").

[16] PC MAGAZINE, COOKIE TABLE, https://www.pcmag.com/encyclopedia/term/cookie.

[17] COOKIEBOT, WHAT ARE TRACKING COOKIES AND HOW DO THEY WORK?, https://www.cookiebot.com/en/tracking-cookies/.

[18] ADOBE, MARKETO ENGAGE, UNDERSTANDING ANONYMOUS ACTIVITY AND PEOPLE, https://experienceleague.adobe.com/en/docs/marketo/using/product-docs/core-marketo-

---

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                          23

65.     An anonymous activity is "merged into a new or existing person" through various actions, such as a website user filling a Marketo form, or the use of the Munchkin Tracking Code on a website.[19]

66.     As Defendant makes clear, the Munchkin Tracking Code "tracks all individuals who visit [a] website so [the website owner] can react to their visits with automated marketing campaigns. Even anonymous visitors are tracked along with their IP addresses and other information."[20]

67.     "Munchkin cookie[]" and has a lifespan of "2 years (730 days)."[21]

68.     Defendant collects and analyzes website users' data for its consumers to use for targeted marketing purposes. Specifically, Defendant enables its customers to "[c]reate and maintain person- and account-level profiles that let marketers precisely and dynamically segment audiences."[22]

69.     For example, Defendant provides a Personal Detail Page function where Defendant's customers, such as Optum, can easily view "all the information Marketo knows about a person."[23]

70.     The compilation of information includes "[c]ontact information and custom fields about a person," a "[p]erson's company information and address," "[a]ll activities related to the person," among other data.[24]

---

concepts/smart-lists-and-static-lists/managing-people-in-smart-lists/understanding-anonymous-activity-and-people.

[19] *Id.*

[20] ADOBE, MARKETO ENGAGE, ADD MUNCHKIN TRACKING CODE TO YOUR WEBSITE, https://experienceleague.adobe.com/en/docs/marketo/using/product-docs/administration/additional-integrations/add-munchkin-tracking-code-to-your-website.

[21] ADOBE, LEAD TRACKING API, https://experienceleague.adobe.com/en/docs/marketo-developer/marketo/javascriptapi/leadtracking/lead-tracking?lang=en.

[22] ADOBE, MARKETO ENGAGE, PROFILES AND AUDIENCES, https://business.adobe.com/products/marketo/profiles-audiences.html.

[23] ADOBE, MARKETO ENGAGE, USING THE PERSON DETAIL PAGE, https://experienceleague.adobe.com/en/docs/marketo/using/product-docs/core-marketo-concepts/smart-lists-and-static-lists/managing-people-in-smart-lists/using-the-person-detail-page.

[24] *Id.*

71. Defendant intercepts this information so that it can "power[] cross-device features and solutions" including, *inter alia*, "visualiz[ing] the paths that consumers take across [] website and apps and with any device"; "optimiz[ing ] experiences with A/B and multivariate testing"; "better forecasting"; and "provid[ing] more accurate people-based attribution allowing [clients] to develop [advertising] messages for people instead of devices."  In sum, Defendant purports to "help[] marketers know their customers more fully" and "market to real people as opposed to devices."[25]

**VII.   Tolling**

72. Any applicable statutes of limitation have been tolled by Optum's knowing and active concealment of its incorporation of the Adobe tracking technologies into its website.

73. The Adobe tracking technologies on Optum's website were entirely invisible to a website visitor. Through no fault or lack of diligence, Plaintiff and Class Members were deceived and/or ignorant of information essential to pursue their claims, and thus could not reasonably discover Defendant's deception and/or unlawful conduct.

74. Accordingly, Defendant is estopped from relying on any statute of limitations.

75. Moreover, all applicable statutes of limitation have also been tolled pursuant to the discovery rule.

76. The earliest that Plaintiff or Class Members, acting with due diligence, could have reasonably discovered Defendant's conduct would have been shortly before the filing of this Complaint.

77. Plaintiff first discovered that Defendant had collected his personal information without his consent in or around November 2025 after contacting undersigned counsel and discussing potential claims against Defendant.

**CLASS ALLEGATIONS**

78. Plaintiff seeks certification of the following class: all persons in the United States who, during the class period, had their PII, PHI, and/or communications improperly intercepted,

---

[25] https://experienceleaguecommunities.adobe.com/t5/adobe-experience-platform-blogs/adobe-experience-platform-s-identity-service-how-to-solve-the/ba-p/431607

recorded, and/or eavesdropped by Defendant, as a result of using the Website (the "Class" or "Nationwide Class").

79.    Plaintiff also seeks to represent a subclass consisting of all California residents who, during the class period, had their II, PHI, and/or communications improperly intercepted, recorded, and/or eavesdropped by Defendant as a result of using the Website (the "Subclass" or "California Subclass") (the Class and Subclass collectively, the "Classes").

80.    Plaintiff reserves the right to modify the Class definitions, including by using subclasses, as appropriate based on further investigation and discovery obtained in the case.

81.    The "Class Period" is the time period beginning on the date established by the Court's determination of any applicable statute of limitations, after considering of any tolling, concealment, and accrual issues, and ending on the date of entry of judgement.

82.    The following people are excluded from the Classes: (1) any Judge presiding over this action and members of her or her family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest (including current and former employees, officers, or directors); (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

83.    **Numerosity/Ascertainability:**  Members of the Classes are so numerous that joinder of all members would be unfeasible and not practicable. The exact number of Class Members is unknown to Plaintiff at this time; however, it is estimated that there are hundreds of thousands of individuals in the Classes.[26] The identity of such membership is readily ascertainable from Defendant's records and non-party records, such as those of Optum.

---

[26] Optum states that it "serve[s] more than 3 million patients throughout Northern and Southern California." https://www.optum.com/en/care/locations/optum-california.html.

84. **Typicality:** The claims of the named Plaintiff are typical of the claims of the Classes because the named Plaintiff, like all other class members, booked a consultation on the Website, and had their confidential electronic communications intercepted by Defendant.

85. **Adequate Representation:** Plaintiff is fully prepared to take all necessary steps to represent fairly and adequately the interests of the Class Members. Plaintiff's interests are coincident with, and not antagonistic to, those of the members of the Classes. Plaintiff is represented by attorneys with experience in the prosecution of class action litigation generally and in the emerging field of digital privacy litigation specifically. Plaintiff's attorneys are committed to vigorously prosecuting this action on behalf of the members of the Classes.

86. **Commonality and Predominance:** There are well-defined common questions of fact and law that exist as to all members of the Classes and that predominate over any questions affecting only individual members of the Classes. These common legal and factual questions, which do not vary between members of the Classes, and which may be determined without reference to the individual circumstances of any Class member, include, but are not limited to, the following: whether Defendant violated the Federal Wiretap Act, 18 U.S.C. § 2510, *et seq.*; and CIPA §§ 631 and 632, and Plaintiff's and Class Members' privacy rights as provided by the California Constitution and common law, and whether Plaintiff and the proposed Class members are entitled to damages, reasonable attorneys' fees, prejudgment interest and costs of this suit.

87. **Superiority:** Class action treatment is a superior method for the fair and efficient adjudication of the controversy. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons or entities a method for obtaining redress on claims that could not practicably be pursued individually, substantially outweighs potential difficulties in management of this class action. Plaintiff knows of no special difficulty to be encountered in litigating this action that would preclude its maintenance as a class action.

**CAUSES OF ACTION**

**COUNT I**
**Violation of the Federal Wiretap Act,**
**18 U.S.C. § 2510,** *et seq.*
**(On Behalf of Plaintiff, the Nationwide Class and California Subclass)**

88.    Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein and brings this count individually and on behalf of the members of the Classes.

89.    The Federal Wiretap Act, as amended by the Electronic Communications Privacy Act of 1986, makes it unlawful for a person to intentionally intercept, endeavor to intercept or procure any other person to intercept or endeavor to intercept any wire, oral or electronic communication. 18 U.S.C. § 2511(a).

90.    Further, the Federal Wiretap Act makes it unlawful for a person to intentionally disclose, or endeavor to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral or electronic communication in violation of the Federal Wiretap Act. 18 U.S.C. § 2511(1)(c).

91.    Further, the Federal Wiretap Act makes it unlawful for a person to intentionally use, or endeavor to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral or electronic communication in violation of the Federal Wiretap Act. 18 U.S.C. § 2511(1)(d).

92.    The Federal Wiretap Act protects both the sending and receiving of communications.

93.    Among other ways, a violation of the Federal Wiretap Act occurs if a person:

    (a)    intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication; [or]

    (b)    intentionally uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication[.]

18 U.S.C. § 2511.

94.    Under the Federal Wiretap Act, "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of [the Federal Wiretap Act] may in a civil action recover from the person or entity … which engaged in that violation such relief as may be appropriate."  18 U.S.C. § 2520(a).

95.    In violation of the Federal Wiretap Act, 18 U.S.C. § 2511(1)(a), Defendant intentionally intercepted, and endeavored to intercept, the electronic communications of Plaintiff and Class Members, namely the transmissions of the confidential and sensitive PII and PHI of Plaintiff and Class Members via the Website.

96.    In violation of the Federal Wiretap Act, 18 U.S.C. § 2511(1)(d), Defendant used, and endeavored to use, the contents of the electronic communications of Plaintiff and Class Members to generate profits and increase revenues based on an analysis of the intercepted communications, knowing and having reason to know that the information was obtained through the unlawful interception of the electronic communications of Plaintiff and Class Members, in violation of the Federal Wiretap Act, as alleged herein.   Indeed, Defendant surreptitiously intercepted the communications of Plaintiff and Class Members without their consent, thereby knowing that the information from those communications was obtained in violation of the Federal Wiretap Act.

97.    The following items constitute "devices" within the meaning of 18 U.S.C. § 2510(5):

    a.    The codes and programs Defendant used to track Plaintiff's and Class Members' communications while they were navigating the Website;

    b.    Plaintiff's and Class Members' browsers and mobile applications;

    c.    Plaintiff's and Class Members' computing and mobile devices;

    d.    The codes and programs used by Defendant to effectuate its tracking and interception of Plaintiff's and Class Members' communications while they were using a browser or application to visit Optum's Website; and

    e.    The plan Defendant carried out to effectuate its tracking and interception of the Plaintiff's and Class Members' communications while they were using Optum's Website.

98. The patient communication information that Defendant intercepted via the embedding of the Adobe tracking technology on Optum's Website—including but not limited to: the state where users are seeking care, the particular search queries and care categories selected by users, the preferred gender of the doctor they wish to see, the name of the doctor they select, the particular facility they select, and that users actually complete and submit forms to become patients—constitutes the contents of electronic communication because it includes detailed URL requests and button clicks that contain information Plaintiff and the Classes actively inputted into the Website.

99. The transmissions described above were "transfer[s] of signs, signals, writing, … data, [and] intelligence of [some] nature transmitted in whole or in part by a wire, radio, electromagnetics, photoelectronic, or photooptical system that affects interstate commerce[,]" and were therefore "electronic communications" within the meaning of 18 U.S.C. § 2510(12).

100. Defendant was not an authorized party to the communications between Plaintiff and Class Members, on the one hand, and Optum, on the other, because Plaintiff and Class Members did not know that it was surreptitiously intercepting the data at issue and did not knowingly send any communications to Defendant.

101. Plaintiff and Class Members did not consent to Defendant's conduct of: (1) intercepting and endeavoring to intercept their confidential communications; and (2) using their confidential communications under circumstances that violated the Federal Wiretap Act.

102. Defendant intentionally intercepted and endeavored to intercept Plaintiff's and Class Members' communications for the purpose of committing a tortious or criminal act in violation of the Constitution or laws of the United States or of any State – namely, invasion of privacy, violation of the CIPA, among others.

103. Defendant was not acting under color of law in intercepting and endeavoring to intercept Plaintiff's and Class Members' communications.

104. Defendant intercepted and endeavored to intercept the communications of Plaintiff and Class Members made via the Website while those communications were in transit, as opposed to being in storage. Indeed, Defendant intercepted and endeavored to intercept the communications

of Plaintiff and Class Members in real time and contemporaneously with Plaintiff and Class Members engaging in those communications.

105.    After intercepting the communications, Defendant used the contents of the communications to provide Optum with analytics and marketing services, as well as for its own business purposes.

106.    As a result of the above actions, Plaintiff and Class Members have been damaged due to the unauthorized interception and use of their confidential communications in violation of 18 U.S.C. § 2520.  As such, Plaintiff and Class Members are entitled to: (1) damages, in an amount to be determined at trial, assessed as the greater of (a) the sum of the actual damages suffered by Plaintiff and any profits made by Defendant as a result of the violation, or (b) statutory damages of whichever is the greater of $100 per day per violation or $10,000; (2) appropriate equitable or declaratory relief; and (3) reasonable attorneys' fees and other costs reasonably incurred.

## COUNT II
**Violation of the California Invasion of Privacy Act,
Cal. Penal Code § 631
(On Behalf of Plaintiff and the Subclass)**

107.    Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

108.    Plaintiff brings this Count individually and on behalf of the members of the Subclass.

109.    CIPA § 631(a) imposes liability for "distinct and mutually independent patterns of conduct."  *Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192-93 (1978).  Thus, to establish liability under CIPA § 631(a), a plaintiff need only establish that the defendant, "by means of any machine, instrument, contrivance, or in any other manner," does any of the following:

> Intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,
>
> *Or*

Willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state,

*Or*

Uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,

*Or*

Aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

110.   CIPA § 631(a) is not limited to phone lines, but also applies to "new technologies" such as computers, the Internet, and email. *See Matera v. Google Inc.*, 2016 WL 8200619, at *21 (N.D. Cal. Aug. 12, 2016) (CIPA applies to "new technologies" and must be construed broadly to effectuate its remedial purpose of protecting privacy); *see also Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1 (9th Cir. May 31, 2022) ("Though written in terms of wiretapping, Section 631(a) applies to Internet communications.").

111.   Defendant's tracking technologies are each a "machine, instrument, contrivance, or … other manner" used to engage in the prohibited conduct at issue here.

112.   Defendant is a "separate legal entity that offers [a] 'software-as-a-service' and not merely a passive device." *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 520 (C.D. Cal. 2021). Further, Defendant has the capability to use the wiretapped information for its own purposes. Accordingly, Defendant has been a third party to any communications between Plaintiff and Subclass Members, on the one hand, and Optum, on the other. *Id.* at 521; *see also Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023).

113.   At all relevant times, through its tracking technology, Defendant willfully and without the consent of all parties to the communication, and/or in any unauthorized manner, read, attempted to read, and/or learned the contents or meaning of electronic communications of Plaintiff and

Subclass Members, on the one hand, and Optum, on the other, while the electronic communications were in transit or were being sent from or received at any place within California.

114. At all relevant times, Defendant used or attempted to use the communications intercepted by its tracking technologies for its own purposes.

115. At all relevant times, Defendant wiretapped Plaintiff and Subclass Members using its tracking technology and to accomplish the wrongful conduct at issue here.

116. Plaintiff and Subclass Members did not provide their prior consent to Defendant's intentional access, interception, reading, learning, recording, collection, and usage of Plaintiff's and Subclass Members' electronic communications.

117. The wiretapping of Plaintiff and Subclass Members occurred in California, where Plaintiff and Subclass Members accessed the Website, and where Defendant—as enabled by Optum—routed Plaintiff's and Subclass Members' electronic communications to Defendant's servers.

118. Pursuant to Cal. Penal Code § 637.2, Plaintiff and Subclass Members have been injured by Defendant's violations of CIPA § 631(a), and each seeks statutory damages of $5,000 for each of Defendant's violations of CIPA § 631(a).

## COUNT III
**Violation of the California Invasion of Privacy Act,**
**Cal. Penal Code § 632**
**(On Behalf of Plaintiff and the Subclass)**

119. Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

120. Plaintiff brings this Count individually and on behalf of the members of the Subclass.

121. CIPA § 632(a) provides for liability where an entity:

> intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio.

122. Defendant's tracking technologies are "electronic amplifying or recording device[s]." *Id.*

123. Cal. Civ. Code § 56.05(j) states:

> "Medical information" means any individually identifiable information, in electronic or physical form, in possession of or derived from a provider of health care ... regarding a patient's medical history, mental health application information, reproductive or sexual health application information, mental or physical condition, or treatment.

124. Here, Website users' communications with Optum—made while searching for medical care via the Website—contain sensitive and confidential "[m]edical information," as defined by Cal. Civil Code § 56.05.

125. First, the communications include "individually identifiable information[.]" Cal. Civil Code § 56.05. Optum enables Defendant to identify individual Website users with Marketo Engage, specifically, the Munchkin Tracking Code, which collect and utilize, *inter alia*, persistent identifiers, cookie IDs, cross-device IDs, device IDs, email addresses, phone numbers, and identify graphs, which, "alone or in combination with other publicly available information, reveals the identity of the individual." Cal. Civ. Code § 56.05.

126. Second, Website users' communications with Optum relate to "a patient's medical history, mental health application information, reproductive or sexual health application information, mental or physical condition, or treatment." Cal. Civ. Code § 56.05. Defendant intercepts and/or otherwise obtains Website users' button clicks or typing selecting the state where they are seeking care, the particular search queries and care categories selected by users, the preferred gender of the doctor they wish to see, the name of the doctor they select, the particular facility they select, and that users actually complete and submit forms to become patients.

127. Thus, Defendant—as aided by Optum—recorded and/or eavesdropped Plaintiff and Subclass Members' communications containing "medical information," which is confidential, under Cal. Civil Code § 56.10.

128. When communicating with Optum, Plaintiff and Subclass Members had an

---

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                                  34

objectively reasonable expectation of privacy, based on Cal. Civil Code § 56.10. Thus, Plaintiff and Subclass Members did not reasonably expect that anyone other than Optum would be on the other end of the communication, and that other third-party entities like Defendant would intentionally use an electronic amplifying or recording device to eavesdrop upon and record the confidential communications of Plaintiff and Subclass Members.

129. Plaintiff and Subclass Members did not consent to Defendant's actions. Nor have Plaintiff or Subclass Members consented to Defendant's intentional use of an electronic amplifying or recording device to eavesdrop upon and record the confidential communications of Plaintiff and Subclass Members.

130. Pursuant to Cal. Penal Code § 637.2, Plaintiff and Subclass Members have been injured by Defendant's violations of CIPA § 632(a), and each seeks statutory damages of $5,000 for each of Defendant's violations of CIPA § 632(a).

## COUNT V
### Invasion of Privacy Under California's Constitution
### (On Behalf of Plaintiff and the Subclass)

131. Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

132. Plaintiff brings this Count individually and on behalf of the members of the Subclass.

133. Plaintiff and Subclass Members have an interest in: (1) precluding the dissemination and/or misuse of their sensitive, confidential communications and PHI; and (2) making personal decisions and/or conducting personal activities without observation, intrusion or interference, including, but not limited to, the right to visit and interact with various internet sites and mobile applications without being subjected to their communications being intercepted, recorded, and/or eavesdropped on without Plaintiff's and Subclass Members' knowledge or consent.

134. At all relevant times, by having its tracking technologies embedded into the Website so that Defendant could intercept, record, and/or eavesdrop, or otherwise obtain users' private communications with Optum regarding their health conditions and treatment, Defendant intentionally invaded Plaintiff's and Subclass Members' privacy rights under the California

Constitution.

135. Plaintiff and Subclass Members had a reasonable expectation that their communications about their health conditions and treatment, and other private information, would remain confidential and that Defendant would not intercept, record, and/or eavesdrop this sensitive information given that no one provided Plaintiff and Subclass Members with the required notice of Defendant's practices.

136. Plaintiff and Subclass Members did not authorize Defendant to intercept record, and/or eavesdrop Plaintiff's and Subclass Members' private medical communications alongside their personally identifiable health information.

137. This invasion of privacy is serious in nature, scope, and impact because it relates to patients' private medical communications. Moreover, it constituted an egregious breach of the societal norms underlying the privacy right.

138. Accordingly, Plaintiff and Subclass Members seek all relief available for invasion of privacy claims under California's Constitution.

## COUNT VI
**Intrusion Upon Seclusion**
**(On Behalf of Plaintiff, the Nationwide Class and California Subclass)**

139. Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein and brings this claim individually and on behalf of the proposed Classes.

140. Plaintiff and Class Members have an interest in: (1) precluding the dissemination and/or misuse of their sensitive, confidential communications about their health conditions and treatment; and (2) making personal decisions and/or conducting personal activities without observation, intrusion or interference, including, but not limited to, the right to visit and interact with various internet sites and applications without being subjected to their communications being intercepted, recorded, and/or eavesdropped on without Plaintiff's and Class Members' knowledge or consent.

141. At all relevant times, by having its tracking technologies embedded into the Website so that Defendant could intercept users' private communications with Optum regarding their health

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                                                                36

conditions and treatment, Defendant intentionally invaded Plaintiff's and Class Members' privacy rights by intruding into their private place, conversation or matter. Defendant's actions amount to an intrusion upon Plaintiff's and Class Members' privacy because Plaintiff and Class Members did not consent to the particular conduct that Defendant engaged in—intercepting their sensitive conversations related to their health concerns and treatment.

142. Plaintiff and Class Members had a reasonable expectation that their communications about their health conditions and treatment, and other private information, would remain confidential and that Defendant would not intercept this sensitive information given that no one provided Plaintiff and Class Members with the required notice of its practice of disclosures.

143. Plaintiff and Class Members did not authorize Defendant to intercept Plaintiff's and Class Members' private medical communications alongside their personally identifiable health information.

144. This invasion of privacy is highly offensive and serious in nature, scope, and impact because it relates to patients' private health condition and treatment communications. Moreover, it constituted an egregious breach of the societal norms underlying the privacy right.

145. Accordingly, Plaintiff and Class Members seek all relief available for Defendant's intrusion upon their seclusion.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a. For a determination that this action is a proper class action;

b. For an order certifying the Class and Subclass, naming Plaintiff as representative of the Class and Subclass, and naming Plaintiff's attorneys as Class Counsel to represent the Class and Subclass;

c. For an order declaring that Defendant's conduct violates the statutes referenced herein;

d. For an order finding in favor of Plaintiff, the Class, and Subclass on all counts asserted herein;

e. For an award of compensatory damages, including statutory damages

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED                    37

where available, to Plaintiff, Class, and Subclass Members against Defendant for all damages sustained as a result of Defendant's wrongdoing, in an amount to be proven at trial;

f.  For punitive damages, as warranted, in an amount to be determined at trial;

g.  For an order requiring Defendant to disgorge revenues and profits wrongfully obtained;

h.  For prejudgment interest on all amounts awarded;

i.  For injunctive relief as pleaded or as the Court may deem proper;

j.  For an order awarding Plaintiff, the Class, and the Subclass their reasonable attorneys' fees and expenses and costs of suit; and

k.  For an order granting Plaintiff, Class, and Subclass Members such further relief as the Court deems appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all causes of action and issues so triable.

Dated: April 6, 2026                    Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Ines Diaz Villafana*

Ines Diaz Villafana (State Bar No. 354099)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: idiaz@bursor.com

*Attorney for Plaintiff*